IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | |
|---|---|
| SHERLEY WOODS, as Administratrix for the ESTATE OF O'SHEA TERRY, <br><br> AND <br><br> TERRENCE HARMON <br>              Plaintiffs, <br> v. <br><br> THE CITY OF ARLINGTON, TEXAS <br> c/o Teris Solis, City Attorney <br> 101 S. Mesquite St. <br> Suite 300 <br> Arlington, TX 76010 <br><br> AND <br><br> BAU TRAN, <br><br> Grand Prairie, Texas <br><br>              Defendants. | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S COMPLAINT

NOW COMES Sherley Woods, as Administratrix for the Estate of O'Shea Terry, and Terrence Harmon, Plaintiffs, complaining of Defendants the City of Arlington, Texas ("the City"), and Bau Tran, and for cause would show the Honorable Court as follows:

1. On September 1, 2018 O'Shea Terry was shot and killed by Arlington Police Department ("APD") Officer Bau Tran, who acted in an unreasonable and subjective manner.

2. Officer Tran fired his gun repeatedly across the face of Terrence Harmon and struck and killed O'Shae Terry.

3. Redacted and limited video evidence of the incident was released by the Arlington Police Department and can be watched at the following URL: [https://www.youtube.com/watch?v=bh08la7J0_s].

## NATURE OF THE ACTION

4. This is an action brought by the Plaintiffs against Defendants, the City of Arlington and its agent and servant, Police Officer Bau Tran for his use of excessive and deadly force under the color of state law resulting in the unlawful shooting death of O'Shea Terry ("Terry") in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

5. This action also asserts state law claims for assault and battery against the City of Arlington and its agent and servant Bau Tran.

6. Plaintiff alleges that the City of Arlington failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise properly equip and control officers including those who are known, or who should have been known, to engage in the use of excessive force and/or deadly force.

7. The City had a duty, but failed to implement and/or enforce training, policies, practices and procedures for the APD that respected Plaintiffs' constitutional rights.

8. Defendant City's failure to adequately supervise, discipline, and train Defendant Tran, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Plaintiffs' unwarranted and excruciating physical and mental anguish and, in the case of Mr. Terry, death.

9. Defendant Tran acted in an objectively unreasonable manner and disregarded the rights of Plaintiffs, knowing that the City would approve and/or ratify his actions.

10. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek redress and compensation for damages and the wrongful death of O'Shae Terry.

## PARTIES

11. Plaintiff, Sherley Woods, is the duly appointed administrator for the Estate of O'Shae Terry, deceased, and is an adult individual and a resident of the state of Texas.

12. Plaintiff, Sherley Woods, has been designated as Administrator of the Estate of O'Shae Terry as she is next of kin under Texas intestacy laws.

13. Plaintiff Terrence Harmon in an adult individual and a resident of the state of Texas.

14. Defendant Officer Bau Tran, is and/or was a police officer with the Arlington Police Department. Upon information and belief, he is a resident of the state of Texas. Defendant Tran may be served at the above captioned address or wherever he may be found.

15. Defendant the City of Arlington, Texas is a municipality duly organized and existing under the laws of the state of Texas. Defendant the City of Arlington is responsible for the funding, budget, policies, operation, and oversight of the Arlington Police Department ("APD"). The APD is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Arlington. The City of Arlington may be served at via the Office of the City Attorney 101 S. Mesquite St. Suite 300 Arlington, TX 76010.

## JURISDICTION AND VENUE

16. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of the decedent O'Shea Terry and co-Plaintiff Terrence Harmon.

Plaintiffs further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

17. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Northern District of Texas.

## FACTS

18. On or about, September 1, 2018 at approximately 1:40 p.m., O'Shae Terry and his passenger, Terrence Harmon, were stopped at or near the 2200 block of California Lane in Arlington, TX by Arlington Police Officer Julie Herlihy after she allegedly observed Terry's temporary registration tag was approximately three days expired.

19. Both Terry and Harmon provided Officer Herlihy proper identifying information which she used to verify their identities.

20. Nonetheless, Officer Herlihy continued to detain the two men alleging she smelled marijuana emanating from the vehicle.

21. A second officer, Defendant Tran, arrived on the scene and approached Mr. Terry's vehicle from the passenger side.

22. Tran ordered the men to lower their windows and to shut off the vehicle's engine, to which they complied.

23. Throughout the entirety of the encounter, Tran was positioned adjacent to the passenger side door of Mr. Terry's vehicle.

24. At no point in time was Tran positioned in the path of the vehicle nor exposed to any risk of harm or injury by Terry or Harmon.

25. Mr. Terry rolled the windows of the SUV upward and started moving forward.

26. Defendant Tran proceeded to grab onto the passenger window and climb onto the side of the vehicle, while reaching for his service weapon with his right hand.

27. As Terry's vehicle began to move forward, Tran stuck his gun through the passenger window – mere inches away from the face of Harmon – and fired at least four shots at Terry.

28. The bullets struck Terry once in his left thigh and three times in his torso.

29. Harmon, fearing he would also be shot, suffered extreme and severe mental and emotional distress, agony and anxiety. Harmon continues to deal with the psychological trauma of fearing for his life.

30. After being struck by several bullets, Terry lost control of the vehicle which careened forward into traffic before veering off the road and onto an adjacent sidewalk.

31. Plaintiff Harmon was forced to grab the steering wheel from the passenger seat and steer the vehicle back onto the road.

32. Harmon then reached down with his hand and removed Terry's leg from the gas pedal and pressed the break with his hand in order to bring the vehicle to a stop.

33. Harmon then exited the vehicle and pulled Terry from the driver seat and attempted to render aid to Terry who was then in excruciating pain and bleeding profusely as a result of the multiple gunshot wounds.

34. While Plaintiff Harmon attempted to provide medical aid to Terry, officers arrived and forced Harmon to the ground and placed him under arrest.

35. Terry was eventually transferred to Medical City Arlington Hospital by EMS where he later died from his injuries.

36. Following an investigation, the Tarrant County District Attorney secured an indictment of Tran on the charge of criminally negligent homicide.

37. As of the date of filing this Complaint, the charge against Tran remains pending.

## FAILURES OF THE ARLINGTON POLICE DEPARTMENT

38. Over the past five years, the Arlington Police Department has been in disarray with misconduct, racial bias, and violations of civil rights.

39. These incidents evidence a department wide disdain for the rule of law and a general culture lacking leadership and discipline.

40. Officers regularly violate the civil rights of citizens and exhibit public disdain for minorities, in particular black males.

41. This general departmental disdain for the rule of law, the rights of individuals, and principles of fairness is evidenced by two separate scandals implicating not just APD patrol officers, but also APD leadership.

*Ticket Quota Scandal*

42. In 2016, sixteen APD officers were embroiled in a scandal which forced their resignation.

43. The APD officers admitted to writing fake parking tickets and reports.

44. The officers stated that the fraudulent tickets were written as a result of pressure from APD leadership.

45. The officers stated that APD leadership had implemented a quota that officers must reach.

46. Quotas for parking citations are illegal under Texas law.

*Excessive Force, Evidence Destruction, and a Cover-up*

47. In July of 2017, APD Officer Chad Haning took the 14-year-old son of Latasha Nelson into custody.

48. Ms. Nelson videotaped the incident.

49. Ms. Nelson's 14-year-old son was taken into custody without incident.

50. An argument broke out between APD officer Haning and Ms. Nelson due to Haning's brusque nature and his refusal to inform Ms. Nelson where he was taking the 14-year-old boy.

51. During the course of the argument, APD officer Haning threw Ms. Nelson's 16-year-old son "John" Nelson to the ground, slapped him, and handcuffed him without any reason.

52. "John" Nelson did not assault Haning, nor was he posing a threat to Haning, his partner, or any other individual.

53. APD officers seized the cellphone on which the incident was recorded.  When Ms. Nelson attempted to retrieve the phone, APD officers attempted to cover up the excessive force and misconduct by offering to drop the charges against the children in exchange for the video.

54. The attempted cover-up of this incident was continued by APD brass when APD Deputy Chief James Lowery ordered Lt. Michael Moses to destroy the original use of force report prepared by Haning.

55. Lt. Moses complied with the order by shredding the use of force report.

### Custom of Using Excessive Force to Resolve Interactions

56. APD officers are woefully undertrained in de-escalation processes.

57. Additionally, APD officers have adopted a custom of utilizing excessive – and frequently deadly – force to resolve normal police encounters.

58. This custom is evidenced by multiple incidents involving APD officers within just the past few years.

*Jonathan Paul*

59. In March of 2015, APD officers Pedro Medina and Steven Schmidt entered the jail cell of Jonathan Paul where they utilized pepper spray, assaulted, and restrained Paul.

60. Paul became unresponsive during the assault and died at a hospital four days later when his family removed him from life support.

61. APD officers Medina and Schmidt retired during the investigation of the incident.

62. Both officers were indicted on charges of criminally negligent homicide.

63. Medina pled guilty to assault causing bodily injury and Schmidt pled guilty to official oppression.

64. As a result of the incident, the City of Arlington settled a wrongful death lawsuit for $1.25 million.

*Christian Taylor*

65. In August of 2015, APD officers encountered college football player Christian Taylor at a car dealership in Arlington.

66. Taylor was suffering from the effects of marijuana and synthetic drugs and had broken into the dealership.

67. APD officer Brad Miller, a rookie, confronted Taylor and ordered him to get down on the ground.

68. Taylor was unarmed at the time and posed no danger to anyone.

69. Taylor did not comply with APD officer Miller's commands and began walking towards Miller.

70. At that time, Miller suddenly and without justification discharged his firearm at least four times, killing Taylor.

71. As a result of the incident, the City of Arlington settled a wrongful death lawsuit for $880,000.

*Tavis Crane*

72. In February of 2017, APD officers stopped a vehicle being driven by Tavis Crane with Dwight Jefferson, Valencia Johnson, and Crane's infant child as passengers.

73. Crane was not armed and there were no weapons in the vehicle.

74. APD officers ordered Crane from the vehicle but he refused to exit.

75. APD officer Craig Roper and Corporal Elise Bowden then attempted to remove Crane from the vehicle by force and Crane resisted.

76. APD officer Roper then suddenly and without justification began discharging his weapon at Crane, striking him multiple times.

77. Crane then attempted to drive the vehicle away.

78. Crane died the following day from the gunshot wounds he sustained.

79. As a result of the incident, a wrongful death suit was filed in this Court in February of 2019 and remains active.

*Gabriel Olivas*

80. In July of 2017, APD officers responded to Mr. Olivas home after receiving a report that he was suicidal.

81. Upon APD officers' arrival, Mr. Olivas was threatening to kill himself and had doused himself in gasoline.

82. Mr. Olivas was distraught and seeking attention.

83. Mr. Olivas never ignited a lighter or any other device to catch himself on fire.

84. There was no indication to any officer responding to the scene that Mr. Olivas was a threat to anyone other than himself.

85. Nonetheless, two APD officers fired their tasers at Mr. Olivas causing him to catch fire and burn.

86. Mr. Olivas passed away as a result of the burns a few days later.

87. As a result of the incident, a wrongful death suit was filed in this Court in June of 2019 and remains active.

*Maggie Brooks*

88. In August of 2019, an APD officer approached Maggie Brooks and her dog as they were lying in the grass.

89. The APD officer asked Ms. Brooks if she was ok and Brooks responded, "I'm fine."

90. As the officer walked towards Brooks, the dog approached and the officer asked "Is that your dog?"

91. The officer then drew his firearm and discharged multiple times.

92. His shots struck Ms. Brooks killing her.

**Pattern of Racial Hostility**

93. The APD has a documented history of conscious or unconscious bias against black males evidenced both by the statements of APD officers and APD statistics on the use of deadly force.

94. Of the incidents described above, Jonathan Paul, Christian Taylor, Tavis Crane, and "John" Nelson are all black males.

95. The City of Arlington is ranked third in the state of Texas for deadly police encounters and over 70% of those shootings involve black males.

96. There have also been multiple documented incidents of APD officers using racially derogatory statements towards blacks, including the use of a racial slur by APD Police Chief Will Johnson.

97. In March of 2019, a complaint was filed against APD Chief Johnson alleging he used the "n-word" – a racial epithet for blacks.

98. The complaint also brought to light a previously non-public incident from 2018 when an officer was suspended for only eight hours after stating "there also aren't a lot of black or Hispanic females that are worth a shit around here."

## WRONGFUL DEATH ACTION

99. Plaintiff, Sherley Woods, as Administratrix of the Estate of O'Shae Terry, deceased, hereby brings Wrongful Death claims in the Counts *infra* pursuant to 4 Tex. Civ. Prac. & Rem. § 71.001 et seq. ("the Texas Wrongful Death Statute"), on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of O'Shae Terry.

100. Shirley Woods, as mother of O'Shae Terry, is entitled to wrongful death benefits under the statute.

101. No other action has been brought to recover for Mr. Terry's death under the aforementioned statute.

102. Plaintiff claims all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, O'Shae Terry, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death.

103. Plaintiff claims damages for payment for all medical bills and/or expenses.

104. Plaintiff claims damages for payment of funeral and burial expenses.

## SURVIVAL ACTION

105. Plaintiff also brings Survival claims in the Counts described *infra* under the Texas Survival Statute, 4 Tex. Civ. Prac. & Rem. § 71.021 et seq. ("the Texas Survival Statute"), for all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for emotional distress suffered by Plaintiff's decedent, O'Shae Terry, from the initiation of the assault upon him until the ultimate cause of his death.

## COUNT I: 42 U.S.C. § 1983 EXCESSIVE FORCE
### ADMINISTRATRIX WOODS AGAINST DEFENDANT, OFFICER BAU TRAN

106. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

107. Plaintiff would show that Defendant Tran's actions on the date at issue in this Complaint deprived Terry of his constitutional rights.

108. Plaintiff would show that Defendant Tran failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, Defendant Tran, without legal or necessary justification or the need to do so, used excessive and deadly force as described above and killed O'Shae Terry.

109. Plaintiff would show that Defendant Tran denied Terry of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

110. The force used by Defendant Tran was objectively unnecessary, excessive and unreasonable under the circumstances, as Terry did not pose an immediate threat to the safety of Defendant Tran or others. Defendant Tran embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in

fact did cause Terry's death and plaintiff to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendant Tran pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: MUNICIPAL LIABILITY
### ADMINISTRATRIX WOODS AGAINST DEFENDANT, THE CITY OF ARLINGTON

111. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

112. The conduct of Defendant Tran as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of O'Shae Terry's constitutional rights.

113. The conduct set forth *supra* evinces a custom of using excessive or improper force, a pattern of disregard for the rule of law, a pattern of racial discrimination against black citizens, and a practice of training and disciplinary failures resulting in officers ill-equipped to handle citizen confrontations equipped with firearms and the authority of law.

114. The City of Arlington exhibited wanton and deliberate indifference to the constitutional rights of its citizens by paying only lip service to formal policymaking and completely ignoring the multiple signs that the Arlington Police force regularly utilized unnecessary and excessive force, lacked proper training on how to confront citizens and what level of force to use, lacked adequate training in de-escalation tactics, lacked adequate training in techniques for detaining individuals in motor vehicles, lacked

adequate training on identifying an actual or imminent threat of death or serious bodily injury, had a custom and culture set forth by the administration that ignored the rule of law, had a custom and culture set forth by the administration which discriminated against black citizens and tolerated such discrimination.

115. These customs, patterns, and practices were a moving force in the deprivation of O'Shae Terry's constitutional rights.

116. By reason of the aforementioned customs, policies, and practices of Defendant, Plaintiff's beneficiary experienced severe pain and suffering and the loss of her son, for which she is entitled to recover damages. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

117. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the City of Arlington pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT III – ASSAULT AND BATTERY
### ADMINISTRATRIX WOODS AGAINST DEFENDANT BAU TRAN

118. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

119. At or about the dates and places alleged herein, Defendant Tran, while acting within the course and scope of his duties as a Police Officer for the Arlington PD, without provocation, warrant, necessity, or legal justification, assaulted and battered O'Shea Terry by pointing his gun at Terry and shooting him at least four (4) times, thereby causing Terry's injuries and death as herein described.

120. Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Tran, in an amount in excess of One Million Thousand Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

### COUNT IV – PUNITIVE AND EXEMPLARY DAMAGES
### ADMINISTRATRIX WOODS AGAINST DEFENDANT TRAN

121. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

122. The conduct of Defendant Tran was malicious, willful, and wanton.

123. Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Terry's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond the bounds of acceptable society, and as such Plaintiff requests punitive and exemplary damages be awarded against Defendants Tran.

## COUNT V: 42 U.S.C. § 1983 EXCESSIVE FORCE
### TERRENCE HARMON AGAINST DEFENDANT, OFFICER BAU TRAN

124. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

125. Plaintiff would show that Defendant Tran's actions on the date at issue in this Complaint deprived Harmon of his constitutional rights.

126. Plaintiff would show that Defendant Tran failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, Defendant Tran, without legal or necessary justification or the need to do so, used excessive and deadly force as described above by pointing his firearm across Harmon's face and discharging it, killing Terry.

127. Plaintiff would show that Defendant Tran denied Harmon of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

128. The force used by Defendant Tran was objectively unnecessary, excessive and unreasonable under the circumstances, as neither Harmon nor Terry presented an immediate threat to the safety of Defendant Tran or others. Defendant Tran embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause severe distress to Harmon as well as Terry's death.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Tran pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other remedies legally appropriate.

## COUNT VI: MUNICIPAL LIABILITY
### TERRENCE HARMON AGAINST DEFENDANT, THE CITY OF ARLINGTON

129. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

130. The conduct of Defendant Tran as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Terrence Harmon's constitutional rights.

131. The conduct set forth *supra* evinces a custom of using excessive or improper force, a pattern of disregard for the rule of law, a pattern of racial discrimination against black citizens, and a practice of training and disciplinary failures resulting in officers ill-equipped to handle citizen confrontations equipped with firearms and the authority of law.

132. The City of Arlington exhibited wanton and deliberate indifference to the constitutional rights of its citizens by paying only lip service to formal policymaking and completely ignoring the multiple signs that the Arlington Police force regularly utilized unnecessary and excessive force, lacked proper training on how to confront citizens and what level of force to use, lacked adequate training in de-escalation tactics, lacked adequate training in techniques for detaining individuals in motor vehicles, lacked adequate training on identifying an actual or imminent threat of death or serious bodily injury, had a custom and culture set forth by the administration that ignored the rule of law, had a custom and culture set forth by the administration which discriminated against black citizens and tolerated such discrimination.

133. These customs, patterns, and practices were a moving force in the deprivation of Terrence Harmon's constitutional rights.

134. By reason of the aforementioned customs, policies, and practices of Defendant, Plaintiff experienced severe pain and suffering and mental anguish.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the City of Arlington pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. § 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT VII - ASSAULT
### TERRENCE HARMON AGAINST DEFENDANT BAU TRAN

135. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

136. At or about the dates and places alleged herein, Defendant Tran, while acting within the course and scope of his duties as a Police Officer for the Arlington PD, without provocation, warrant, necessity, or legal justification, assaulted Terrence Harmon by pointing his gun across the face of Harmon and discharging it repeatedly.

137. Plaintiff seeks damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Tran, in an amount in excess of One Million Thousand Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

### COUNT VIII – PUNITIVE AND EXEMPLARY DAMAGES
### TERRENCE HARMON AGAINST DEFENDANT TRAN

138. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

139. The conduct of Defendant Tran was malicious, willful, and wanton.

140. Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Harmon's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond the bounds of acceptable society, and as such Plaintiff requests punitive and exemplary damages be awarded against Defendants Tran.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Tran, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

Respectfully submitted,

**MERRITT LAW FIRM**

/s/ *S. Lee Merritt*
S. Lee Merritt, Esquire
1910 Pacific Ave., Suite 8000
Dallas, TX 75201
(215) 545-8800
lee@leemerrittesq.com

**McELDREW YOUNG**

Daniel N. Purtell, Esq.
John J. Coyle, Esq.
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
(215) 545-8805 (fax)
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com
*Pro Hac Vice Admission Pending*

Dated: September 4, 2019