UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERLEY WOODS, et al | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 4:19-CV-00696-O |
| | § | |
| CITY OF ARLINGTON, et al | § | |

## BAU TRAN'S SECOND MOTION & BRIEF TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.  SUMMARY…………………………………………………………………………1

II.  IDENTIFICATION OF LIVE PLEADING & SUMMARY OF CLAIMS……………………1

III.  LEGAL STANDARD GOVERNING MOTION TO DISMISS……………………………...2

IV.  PLAINTIFFS MUST CARRY A BURDEN OF OVERCOMING BOTH PRONGS
    OF BAU TRAN'S QUALIFIED IMMUNITY……………………………………..............4

V.  PLAINTIFFS FAIL TO OVERCOME FIRST PRONG OF QUALIFIED IMMUNITY –
    NO SHOWING OF EXCESSIVE FORCE …………………………………………………4

    A. Conclusory Allegations Unsupported by Sufficiently Specific Factual Allegations……4
    B. Excessive Force Claims are Governed by Fourth Amendment Standards…………….5
    C. Plaintiffs' Allegations & Information Relied On By Plaintiffs Defeats a Fourth
       Amendment Claim…………………………………………………………………………7
        1.  Facts Admitted in Complaint and Depicted in Video…………………………7
        2.  The Law Applied to the Facts Defeats the Fourth Amendment Claim…………..9
    D. Harmon's Claim Fails – He Was Not the Intended Subject of Tran's Use of Force…..12

VI.  PLAINTIFFS FAIL TO OVERCOME SECOND PRONG OF IMMUNITY –
    NO VIOLATION OF CLEARLY ESTABLISHED LAW…………………………………17

    A. Clearly Established Law Requires Factual Particularity……………………………...17
    B. No Case Forbid Tran's Particular Conduct & Some Similar Cases Support His
       Conduct…………………………………………………………………………………19

VII.  FAILURE OF STATE LAW CLAIMS FOR ASSAULT & BATTERY…………………...21

    A. Dismissal of Tort Claims is Mandatory……………………………………………21
    B. Failure of Assault & Battery Claims…………………………………………………..23

VIII.  FAILURE OF CLAIM FOR PUNITIVE DAMAGES…………………………………24

IX.  ALTERNATE REQUEST FOR A RULE 7 REPLY PURSUANT TO
    FED. R. CIV. P. 7(a)………………………………………………………………....24

    A. Overview of Plaintiff's Claims………………………………………………………24
    B. Requirements for Factually Specific Allegations……………………………………25

# **TABLE OF AUTHORITIES**

STATUTES:

Fed. R. Civ. P. 7(a)……………………………………………………………………24, 25

Fed. R. Civ. P. 8…………………………………………………………………………3

Fed. R. Civ. P. 12(b)(6)……………………………………………………2, 3, 14, 25

Tex. Civ. Prac. & Rem. Code § 101.106……………………………………………22

Texas Penal Code § 9.21…………………………………………………………23

Texas Penal Code § 9.22…………………………………………………………23

Texas Penal Code § 9.51…………………………………………………………23

Texas Penal Code § 9.52…………………………………………………………23

CASES:

Anderson v. Creighton, 483 U.S. 635, 646, 107 S. Ct. 3034, 3040 (1987)…………………………..17

Ashcroft v. al-Kidd, 563 U.S. ____, 131 S.Ct. 2074, 2084 (2011)………………………………17

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)……………………………………....3, 4, 5, 12, 25

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)………………………………………………3

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)…………………………………3, 5

Brosseau v. Haugen, 543 U.S. 194, 198 (2004)………………………………17, 18, 20, 21

Brower v. County of Inyo, 489 U.S. 593, 596-597 (1989)………………………………………..13

Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001)………………………………………………4

Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)……………………………………………4

Cass v. City of Abilene, 814 F.3d 721, 732-733 (5th Cir. 2016)……………………………...19, 21

City & County of San Francisco v. Sheehan, ___ U.S. __, 135 S.Ct. 1765 (May 18, 2015)............18

City of Escondido v. Emmons, __ U.S. __, 139 S. Ct. 500, 503 (2019)…………………………18

Coon v. Ledbetter, 780 F.2d 1158 (5th Cir. 1986)………………………………………………12, 16

Crawford-El v. Britton, 523 U.S. 574, 597-598 (1998)…………………………………………...25

Davis v. Scherer, 468 U.S. 183, 195, 104 S. Ct. 3012 (1984)……………………………………17

District of Columbia v. Wesby, __ U.S. __, 138 S. Ct. 577, 590 (2018)…………………………18

Florida v. Harris, 568 U.S. 237, 243-244 (2013)……………………………………………………10

Franka v. Velasquez, 332 S.W.3d 367, 381-383 (Tex. 2011)……………………………………...22

Goldston v. City of Fort Worth, 2017 WL 11349538 *2 (N.D. Tex. 2017), affirmed at 775 Fed. Appx. 772 (5th Cir. Aug. 23, 2019)……………………………………………………11, 20

Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)………………………………………………3

Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)……....5, 6, 12, 18

Grandstaff v. City of Borger, Texas, 767 F.2d 161, 172 (5th Cir. 1985)…………………………16

Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992)……………………………………...5

Hinojosa v. City of Terrell, 834 F.2d 1223 (5th Cir. 1988), appeal after remand, 864 F.2d 401 (5th Cir. 1989), cert. denied, 493 U.S. 822 (1989)……………………………………………23, 24

Hope v. Pelzer, 536 U. S. 730, 739, 122 S. Ct. 2508 (2002)……………………………………17

Hudson v. McMillian, 503 U.S. 1, 7; 112 S.Ct. 995, 999 (1992)…………………………………12

Kelemen v. Elliott, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008)………………22

Khansari v. City of Houston, 14 F. Supp. 3d 842, 862-65 (S.D. Tex. 2014)……...12, 14, 15, 16, 17

Lindol-Riveros v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990)………………………………13

Medeiros v. O'Connel, 150 F.3d 164, 166-167 (2nd Cir. 1998)……………………………………13

Memphis Community School District v. Stachura, 477 U.S. 299, 306 (1986)……………………24

Mission Consolidated I.S.D. v. Garcia, 253 S.W.3d 653, 659 (Tex. 2008)………………………22

Morgan v. Hubert, 335 F. App'x 466, 470 (5th Cir. 2009)…………………………………………4

Morgan v. Swanson, 659 F.3d 359, 371-372 (5th Cir. 2011) (en banc)……………………………17

Morrow v. Meachum, No. 17-11243, ___ F.3d ___, 2019 WL 1090956 *3-4 (March 8, 2019 5th Cir. 2019)…………………………………………………………………………………...17

Mullenix v. Luna, 577 U.S. ___, 136 S.Ct. 308 (2015)………………………………………17, 21

Ontiveros v. City of Rosenberg, 564 F.3d 379, 384 n. 2 (5th Cir. 2009)…………………………18

Pearson v. Callahan, 555 U.S. 223, 232 (2009)…………………………………………………4

Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012)………………………………….4

Saucier v. Katz, 533 U.S. 194, 201 (2001)………………………………………………….4, 6, 18

Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995)…………………………………………25

Schultz v. Braga, 455 F.3d 470 (4th Cir. 2006)……………………………………………………13

Scott v. Harris, 550 U.S. 372, 380-381 (2007)……………………………………………….5, 8

Tennessee v. Garner, 471 U.S. 1, 11 (1985)……………………………………………………..6

U.S. v. Contreras, 905 F.3d 853, 858 (5th Cir. 2018)…………………………………………....10

U.S. v. Ex Rel Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 377 (5th Cir. 2004)…………5

U.S. v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999)………………………………………………10

U.S. v. Perez, 484 F.3d 735, 744 (5th Cir. 2007)………………………………………………..10

Vann v. City of Southaven, 884 F.3d at 310 (5th Cir. 2018)………………………………18, 19, 21

Vietnamese Fisherman Assoc. v. Knights of the KKK, 518 F.Supp. 993 (S.D. Tex. 1981)………23

Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015)………………………………….4

White v. Pauly, 580 U.S. ___, 137 S.Ct. 548, 551-552 (2017)…………………………….........18

Winzer v. Kaufman County, 916 F.3d 464, 476-477 (5th Cir. Feb. 18, 2019)………………….19

Woolery v. City of Mineral Wells, 2005 WL 755762 *6 (N.D. Tex. 2005)…………………11, 20

Young v. Green, 2012 U.S. Dist. Lexis 115027, 2012 WL 3527040, *4 (S.D. Tex. Aug. 15, 2012)………………………………………………………………………....17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERLEY WOODS, et al | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 4:19-CV-00696-O |
| | § | |
| CITY OF ARLINGTON, et al | § | |

**BAU TRAN'S SECOND MOTION & BRIEF TO DISMISS**

Defendant Bau Tran moves to dismiss Plaintiffs' Amended Complaint (Doc. 26 – hereinafter "Complaint") as follows:

## I. SUMMARY

Defendant Tran is sued based upon alleged violations of the Constitution and Texas law, for events involving his performance of police officer duties, in connection with the shooting injuries received by decedent O'Shea Terry, as well as alleged excessive force used against Terrence Harmon (who did not have any force intentionally directed at him by Tran). Even taking the face of the Complaint and the items incorporated therein as true, the facts pled are insufficient to show a Constitutional violation or to show a violation of clearly established law. Defendant Tran is therefore entitled to qualified immunity. Defendant Tran has asserted qualified immunity in detail, and therefore if the Court overrules his Motion to Dismiss, Plaintiffs should be required to submit a specific Reply to Tran's immunity defense.

## II. IDENTIFICATION OF LIVE PLEADING & SUMMARY OF CLAIMS

Plaintiffs' live pleading is "Plaintiffs' Complaint" filed November 25 2019 (Doc. 26). Plaintiffs' allegations against Bau Tran are as follows:

1.  Count I – Alleged excessive force applied against O'Shea Terry by Tran in violation of the Fourth Amendment reasonableness standard (Doc. 26 pp. 14-15 ¶¶ 125-129);

2.  Count III – Alleged assault and battery committed by Tran "within the course and scope of his duties as a Police Officer for Arlington PD" against O'Shea Terry under Texas law (Doc. 26 pp. 16-17 ¶¶ 138-140);

---

3.   Count IV - Claim for punitive damages on behalf of O'Shea Terry (Doc. 26 p. 17 ¶¶ 141-143);

4.   Count V – Alleged excessive force by Tran against Terrence Harmon in violation of the Fourth Amendment reasonableness standard (Doc. 26 p. 18 ¶¶ 144-148);

5.   Count VII – Alleged assault and battery committed by Tran "within the course and scope of his duties as a Police Officer for Arlington PD" against Terrence Harmon under Texas law (Doc. 26 p. 20 ¶¶ 156-158);

3.   Count VIII - Claim for punitive damages on behalf of Terrence Harmon (Doc. 26 p. 21 ¶¶ 159-161).

Notably absent from the body of the Complaint is any detailed description of decedent Terry's conduct, some of which is depicted in the video relied upon in the Complaint (Doc. 26 p. 2 ¶ 3). The central features of the Complaint amount to conclusory assertions that the circumstances described by Plaintiffs did not justify the use of force by Tran.

Plaintiffs assert Tran was at all relevant times a Police Officer with the City of Arlington Police Department acting under color of state law (Complaint, Doc. 26 p. 3 ¶ 14; p. 16 ¶ 139; p. 20 ¶ 157), and "…within the course and scope of his duties as a Police Officer for Arlington PD…" (Complaint, Doc. 26 p. 16 ¶ 139; p. 20 ¶ 157). The face of the Complaint also states, "This action also asserts state law claims for assault and battery against the City of Arlington and its agent and servant Bau Tran." (Complaint, Doc. 26 p. 2 ¶ 5). Each of the "Counts", including the assault and battery counts, begin with "Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein." (Complaint, Doc. 26 p. 16 ¶ 138 – assault and battery claim as to decedent O'Shea Terry; p. 20 ¶ 156 – assault and battery claim on behalf of Terrence Harmon). There is no doubt that the state law tort claims of assault and battery are asserted against not only Defendant Tran, but also against Defendant City of Arlington.

### III.   LEGAL STANDARD GOVERNING MOTION TO DISMISS

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal

liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the Twombly standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez, 577 F.3d at 603 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" Id.

In Iqbal, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." Iqbal, 556 U.S.

at 680. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." Morgan v. Hubert, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. The Complaint is devoid of sufficient information to meet the standards of Iqbal. The Complaint should be dismissed.

## IV.  **PLAINTIFFS MUST CARRY A BURDEN OF OVERCOMING BOTH PRONGS OF BAU TRAN'S QUALIFIED IMMUNITY**

Because this Motion is based on qualified immunity, it is well settled that Plaintiffs have the burden of negating both prongs of the defense. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008); Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012). The Fifth Circuit holds that carrying this burden is a demanding standard. Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015). See also Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).

The Supreme Court has developed a two-pronged inquiry for resolving government officials' qualified immunity claims: (1) whether the facts that the Plaintiff have stated make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the Defendant's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001). As shown below, Plaintiffs have not carried their burden as to either prong of qualified immunity.

## V.  **PLAINTIFFS FAIL TO OVERCOME FIRST PRONG OF QUALIFIED IMMUNITY – NO SHOWING OF EXCESSIVE FORCE**
### A.  Conclusory Allegations Unsupported by Sufficiently Specific Factual Allegations

The allegations in the Complaint regarding Defendant's use of force are insufficient to state a claim. To avoid dismissal, "plaintiff must plead specific facts, not mere conclusory allegations."

Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992). Here, Plaintiffs make conclusory assertions that excessive force was used by Defendant Tran against both decedent Terry and Plaintiff Harmon in reacting to Terry, but Plaintiffs do not adequately provide sufficient facts describing decedent Terry's conduct. Plaintiffs cite to a video, released by the Arlington Police Department and available on YouTube showing some of the events, effectively "attaching" the video. (Complaint, Doc. 26 p. 2 ¶ 3 referring to the video located at **https://www.youtube.com/watch?v=bh08la7J0_s**. (The video was posted on YouTube by the Arlington Police Department, and on its face, the video has some matters redacted.) They ignore significant events captured on the video, and present only conclusory claims. Conclusory claims unsupported by sufficient factual allegations do not allow the Court to find that the force used was excessive under the totality of the circumstances as required by governing standards. Graham v. Connor, 490 U.S. 386, 390-395 (1989).

While at this pleading stage the Court will accept as true Plaintiffs' "well-pleaded" facts to evaluate this Motion,[1] the Court should accept the events specifically documented on the "attached" video because exhibits amounting to actual documentation of matters control over mere allegations. U.S. v. Ex Rel Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 377 (5th Cir. 2004); Scott v. Harris, 550 U.S. 372, 380-381 (2007).

### B.  Excessive Force Claims are Governed by Fourth Amendment Standards

Because Plaintiffs claim that Defendant used excessive force, the starting point should therefore be an analysis of the governing standards for such a claim. Plaintiffs' claim of excessive force is to be analyzed under the Fourth Amendment and its reasonableness standard. Graham, 490 U.S. at 395. In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly

---

[1] A well-pleaded fact does not mean it is true, it simply means that it is sufficiently specific to meet the standards recognized by the Supreme Court in Twombly and Iqbal.

excessive to the need; and the excessiveness of which was (3) objectively unreasonable. Courts, however, should not second-guess an officer's judgment, should not expect the officer to have followed the most prudent course of conduct as judged by 20/20 hindsight, and should not forget that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving ...." Graham v. Connor, 490 U.S. 386, 390.

When an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not Constitutionally unreasonable to prevent escape by using deadly force. Tennessee v. Garner, 471 U.S. 1, 11 (1985). If an officer reasonably but mistakenly believes that a suspect is likely to fight back, the officer is justified in using more force than in fact was needed under the circumstances. Saucier v. Katz, 533 U.S. 194, 205 (2001).

The conclusory allegations in the Complaint, together with Terry's conduct captured on the YouTube video make it impossible for the Court to determine that Plaintiffs have stated enough to make a claim that the force used was excessive. As the Supreme Court has explained:

> "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and. whether he is actively resisting arrest or attempting to evade arrest by flight."

Graham v. Connor, 490 US. 386, 396, 109 S. Ct. 1865, 1871-72, 104 L. Ed. 2d 443 (1989) (internal quotes and citations omitted) (emphasis added). Here, Plaintiffs avoid fully explaining the circumstances surrounding and leading up to the use of force, ignore events indisputably captured on the YouTube video, and such failure cannot allow the Court to determine that the force used was

excessive. See _Id_.

### C.  Plaintiffs' Allegations & Information Relied On By Plaintiffs Defeats a Fourth Amendment Claim

Plaintiffs refer to and rely on the Arlington Police Department's partially redacted video released on YouTube (**https://www.youtube.com/watch?v=bh08la7J0_s**) (Complaint, Doc. 26 p. 2 ¶ 3). Defendant acknowledges that the Arlington Police Department video posted on YouTube (YouTube video) is redacted and limited. However, certain events are clearly captured on the video, and when these events are considered along with allegations in the Complaint, such information defeats a Fourth Amendment claim. In describing the facts alleged in the Complaint and depicted in the redacted and limited YouTube video, events located on the video will be referred to by the counter number of the event.[2]

### 1.  Facts Admitted in Complaint and Depicted in Video

Terry was driving an SUV and Harmon was a passenger when they were stopped in approximately the 2200 block of California Lane in Arlington, Texas by Arlington Police Officer Herlihy (Complaint, Doc. 26 p. 4 ¶ 18). During the stop, Officer Herlihy communicated with Terry and Harmon and obtained identifying information from them. While Officer Herlihy was talking to the driver Terry and his passenger Harmon, she could smell marijuana emanating from the SUV (Complaint, Doc. 26 p. 4 ¶¶ 19 & 20). Officer Herlihy states on the video that she smelled marijuana in their SUV (video counter 9:06). Officer Herlihy told Terry and Harmon that she was going to have to search their SUV because of the marijuana smell (video counter 9:30).

Defendant Tran arrived on the scene and approached the stopped SUV from the passenger side. Defendant Tran's body camera recording begins on the YouTube video at counter 24:28. As Officer Tran is standing next to passenger side of the stopped SUV, Officer Herlihy is visible on the

---

[2] Apparently the Arlington Police Department posting of the YouTube video has been accomplished in a way that prevents the video from being copied or downloaded.

other side standing next to the driver's window occupied by Terry (video counter 25:47). Officer Herlihy then moves away from the stopped SUV while Tran remains standing on the passenger side (Complaint, Doc. 26 p. 4 ¶ 21 and video counter 26:47-51). Tran's reflection can be seen in the window and on the body of the stopped SUV throughout much of the remaining portions of the video.

Tran asked, "Hey if you don't mind rolling the window down" (video counter 26:51) (Complaint, Doc. 26 p. 4 ¶ 22). While the Complaint does not mention this, Tran asked Terry and Harmon if they had smoked them all and whether there was any more (marijuana) in the vehicle. (video counter 27:00-27:05). Tran obviously could also smell marijuana emanating from the vehicle (Complaint, Doc. 26 p. 4 ¶ 20). Tran then asked, "Hey, could you do me a favor and cut the engine?", and Terry then turned off the SUV's engine (video counter 27:18) (Complaint, Doc. 26 p. 4 ¶ 22). Tran then responds, "Thank you, appreciate that." (video counter 27:20).

A couple of minutes later, Terry, Harmon or both rolled up the windows on the SUV (video counter 29:47) (Complaint, Doc. 26 p. 5 ¶ 30). Almost immediately, Tran yells out, "Hey, hey, hey, hey!", as he reaches with his left hand and grabs the passenger side window glass, and at the same time steps on the SUV's running board, and reaches inside the passenger window with his right arm (video counter 29:49) (Complaint, Doc. 26 p. 5 ¶ 30). Despite the video squarely contradicting the assertion, the Complaint asserts that Tran immediately grabbed for his service weapon with his right hand even though the video shows that Tran actually first was reaching into the passenger compartment with his empty right hand (compare Complaint, Doc. 26 p. 5 ¶ 31 to video counter 29:49). After incorrectly asserting in the Complaint that Tran had immediately reached for his service weapon with his right hand, Plaintiffs also ignore other events unmistakably captured on the video.[3]

Tran's reflection clearly shows that his right hand is on his holstered pistol at approximately

---

[3] When a video of the events directly contradicts a plaintiff's description, the Court is not bound to accept the mere allegations, but instead should view the facts as depicted in the video. Scott v. Harris, 550 U.S. 372, 380-381 (2007).

video counter 29:51 and the reflection shows that Tran's right hand remains on his holstered pistol, and he continues to stand on the SUV's running board while the next rapidly moving events take place. Standing on the running board with his right hand on his holstered pistol, Tran again yells, "Hey stop!", while driver Terry is leaning forward apparently attempting to try to start the SUV engine (video counter 29:51-52). Terry's first unsuccessful attempt to start the engine is captured on the video (video counter 29:53). The reflection shows Tran's right hand continues to remain on his holstered pistol. Tran then yells, "Stop!" and he turns his body placing his right hand behind his body out of view of the reflection – but his right hand is certainly not stuck through the passenger window holding a pistol as alleged in the Complaint (Doc. 26 p. 5 ¶ 32) (video counter 29:54).

While Tran is holding onto the window glass with his left hand, and while he was standing on the SUV's running board, Terry is finally successful in engaging the engine and the engine can be heard starting (video counter approximately 29:56-57) and the SUV is then moving forward. Only after that point do shots begin (video counter 29:57-59). Tran falls or jumps off the SUV and his body camera recording makes it clear he is rolling (video counter 30:07-08).

## 2. The Law Applied to the Facts Defeats the Fourth Amendment Claim

Plaintiff's allegations, together with the information in the YouTube video, shows that Terry was the driver, he had been ordered to disengage or turn off the engine, he did so, but he apparently thought about the fact his vehicle was going to be searched for marijuana, because both Officer Herlihy and Defendant Tran smelled marijuana emanating from the SUV, and Terry then decided to flee the scene.

When Terry first tried to roll up the window, Officer Tran grabbed the window glass and held on, and stood on the running board and reached inside the vehicle, apparently in an attempt to stop Terry from engaging the ignition of the SUV after Terry's first failed attempt to engage the ignition. The whole time Defendant Tran was yelling and telling Terry to stop. At least at first Tran's right

hand was then returned to and placed on top of his holstered pistol while he was holding onto the SUV's window, standing on the running board, and yelling at Terry. But in disregard for all of this, and in disregard for Tran's life, and while posing a danger to anyone else in the immediate vicinity (the video does show that California Lane is a broad 4-lane street), Terry began driving off while Tran was standing on the running board and holding onto the SUV.

Any reasonable person or police officer would reasonably immediately fear serious injury or death if the driver of a stationary vehicle started driving away as the person was standing on the running board and holding onto the side of that vehicle. Certainly, a reasonable officer facing the circumstances would have probable cause to believe that the officer or any other person in the immediate vicinity faced an immediate risk of serious injury or death. As can be seen when Tran fell off or jumped from the moving SUV, he rolled and tumbled on the concrete pavement of a 4-lane (2 lanes each direction) roadway. That in and of itself could have been a source of serious injury or death, and landing in the street could have exposed Tran to being hit by another vehicle. Likewise, an officer could reasonably perceive that the fleeing driver, who was driving an SUV which had the smell of marijuana emanating from it, had impaired abilities or judgment, which thus posed additional risk to other occupants of the roadway or the adjacent sidewalk.

Probable cause is not a high standard. The standard of probable cause certainly is not proof beyond a reasonable doubt or even by as much as a preponderance of the evidence. The Supreme Court holds that such standards have no place in the probable cause determination. Florida v. Harris, 568 U.S. 237, 243-244 (2013). The Fifth Circuit has repeatedly recognized that the fair probability standard for probable cause is something more than a fair suspicion but need not reach the 50% mark. U.S. v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999); U.S. v. Perez, 484 F.3d 735, 744 (5th Cir. 2007); U.S. v. Contreras, 905 F.3d 853, 858 (5th Cir. 2018).

Courts in the Northern District have dealt with factually similar situations, and have held that

officers did not violate the Fourth Amendment by firing shots into cars.

One case began with a vehicle that had been stopped. One marked police vehicle was stopped at an angle in front of the suspect's pickup and an unmarked police vehicle was stopped behind the pickup at an angle in an attempt to block the truck. The officer in the unmarked vehicle got out and began walking behind the suspect's vehicle when the suspect began moving the truck in reverse. The Court wrote:

> "Almost immediately after hearing the squeal of [the suspect's] tires as he attempted to reverse, [Officer] Anderson fired nine shots into the driver's side window in the course of less than three seconds. [The suspect] was struck several times and killed."

Goldston v. City of Fort Worth, 2017 WL 11349538 *2 (N.D. Tex. 2017), affirmed at 775 Fed. Appx. 772 (5th Cir. Aug. 23, 2019). The District Court in Goldston held that the plaintiff failed to demonstrate that the officer violated the suspect's Fourth Amendment rights. Goldston, 2017 WL 11349538 *6. The Fifth Circuit affirmed noting that, "When Goldston began to back up suddenly, it was reasonable for [Officer] Anderson to believe that Officer Straten was in danger." 775 Fed. Appx. at 773. In Goldston, Officer Anderson was on foot standing next to Goldston's pickup when it began to back up suddenly – Officer Anderson knew that the other officer was behind or near the pickup. It is also worth mentioning that the suspect in Goldston was wanted under a warrant that had been issued because he had dragged another police officer with his vehicle (775 Fed. Appx. at 773), a factor the District Court considered one of the "salient facts" Officer Anderson possessed at the time he shot Goldston (2017 WL 11349538 *6). Here a "salient fact" certainly is the fact Tran was an unwilling unprotected rider on the outside of a fleeing SUV.

In another Northern District case, an officer fired multiple shots through the roof of a vehicle as the officer was holding onto the vehicle and it was being driven down the street. Woolery v. City of Mineral Wells, 2005 WL 755762 *6 (N.D. Tex. 2005). In Woolery, the District Court did not reach the issue of the clearly established law component of qualified immunity because plaintiffs had not

produced credible summary judgment evidence that the officer violated the suspect's Constitutional rights by firing into the vehicle as he rode on the outside of the vehicle. 2005 WL 755762 *5-6.

While ignoring Terry's own indisputable conduct, and then making conclusory assertions of excessive force, Plaintiffs' conclusory and incomplete description of events does not show a use of excessive force under governing standards. Graham, 490 U.S. at 396; Hudson v. McMillian, 503 U.S. 1, 7; 112 S.Ct. 995, 999 (1992); and Iqbal, 556 U.S. at 678. Instead, at most, Plaintiffs' description of events, and the matters Plaintiffs failed to describe, but which are depicted in the Arlington Police Department's YouTube video (Complaint, Doc. 26 p. 2 ¶ 3) certainly do not show excessive force. In other words, where, as here, "the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950. Plaintiffs' claim that Defendant Tran used excessive force against both Terry and Harmon should be dismissed.

**D.  Harmon's Claim Fails – He Was Not the Intended Subject of Tran's Use of Force**

Plaintiffs allege Officer Tran fired his gun repeatedly across the face of Terrence Harmon striking O'Shea Terry (Complaint, Doc. 26 p. 1 ¶ 2 & p. 5 ¶ 32). All of the shots were fired at and struck Terry (Complaint, Doc. 26 p. 1 ¶ 2 and p. 5 ¶¶ 32 & 33). Harmon acknowledges he was not struck, but he alleges he suffered mental and emotional distress and psychological trauma as he witnessed these events (Complaint, Doc. 26 p. 5 ¶ 34). At most, Harmon was a bystander and was not the intended subject of Tran's use of force. Federal law does not recognize bystander claims under § 1983. *See* Coon v. Ledbetter, 780 F.2d 1158 (5th Cir. 1986); Khansari v. City of Houston, 14 F. Supp. 3d 842, 862-65 (S.D. Tex. 2014).

In fact, it is very well settled that a civil rights claim fails when the claim is based on accidentally or inadvertently inflicted serious injuries (even death), resulting from a police officer shooting at someone else, even if the officer's shots unintentionally strike the person who becomes the

subject of a claim. Here, Harmon was not hit by any shots. But even if he had been hit, his claim would nonetheless fail.

In two cases, the First Circuit and the Second Circuit both held that there was no Fourth Amendment seizure in cases involving an accidental shooting of a plaintiff. In both cases, a Plaintiff was taken hostage by a robber and was riding in a car that the robber/hostage-taker was driving. In both cases, the Police Officers shot at the robber in the car hoping to stop the robber. Unfortunately, those Plaintiffs were shot when the Officers were attempting to shoot the robbers. Lindol-Riveros v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990). The First Circuit held that this was not a seizure under the Fourth Amendment because the Police action directed toward producing a particular result is required for purposes of a Fourth Amendment seizure. The First Circuit held that Police action which simply causes a particular result is not a Fourth Amendment seizure. Lindol-Riveros, 906 F.2d at 795-796.

The Second Circuit reached the same result. Medeiros v. O'Connel, 150 F.3d 164, 166-167 (2nd Cir. 1998). The Second Circuit held that there was no seizure within the meaning of the Fourth Amendment. The Second Circuit relied upon the United States Supreme Court holding in Brower v. County of Inyo, 489 U.S. 593, 596-597 (1989). In Brower, the Supreme Court held that there was a Fourth Amendment seizure only when there is a governmental termination of freedom of movement through means intentionally applied. The Fourth Circuit decided a case with factual similarity. Schultz v. Braga, 455 F.3d 470 (4th Cir. 2006). In Schultz, FBI Special Agent Braga was involved in stopping a vehicle. FBI Agent Braga fired a rifle shot, from outside the vehicle, intending to strike and striking Schultz, who was the driver of the stopped vehicle. 455 F.3d at 474-475. The passenger who was sitting next to the driver when the driver was shot sued FBI Special Agent Braga alleging his actions violated the passenger's Fourth Amendment rights. The District Court held that FBI Special Agent Braga had not violated the passenger's Fourth Amendment rights by using force against

the driver. 455 F.3d at 476, 479-481. The Fourth Circuit Court affirmed, finding that the passenger had not been subjected to a Fourth Amendment seizure.

In addition to these two cases in the First and Second Circuits, each of the following cases held that accidental Police shootings did not rise to the level of a Fourth Amendment seizure. Glasco v. Ballard, 768 F.Supp. 176 (E.D.Vir. 1991); Troublefield v. City of Harrisburg, 789 F.Supp. 160 (N.D.Penn. 1992); Clark v. Buchko, 936 F.3d 212 (D.N.J. 1996); Guerra v. Montgomery County, 118 Fed.Appx. 673, 2004 WL 2798915 (4th Cir. 2004); Pollino v. City of Philadephia, 2005 WL 372105 (E.D.Penn. 2005); McCoy v. City of Monticello, 411 F.3d 920 (8th Cir. 2005).

Plaintiff Harmon completely ignores the threshold requirement of showing he suffered a seizure under the Fourth Amendment. Because Harmon cannot make a showing that a seizure took place under the Fourth Amendment, it is simply not necessary for the Court to indulge in any other analysis. However, even if Harmon asserts he is a bystander, his claim fails as additionally explained below.

The case of Khansari v. City of Houston provides analytical similarities for evaluating the claims of the bystander Plaintiff Harmon in the case at hand. *See* Khansari v. City of Houston, 14 F. Supp. 3d 842, 861-64 (S.D. Tex. 2014). Like the procedural posture of this case, the Khansari decision was rendered on a municipality's motion to dismiss. *Id.* at 848-49. The City of Houston sought a Rule 12(b)(6) dismissal of the federal law claims asserted by Debra and Michael Khansari (the parents of plaintiff Corey Khansari) for "individual and bystander liability". *Id.*

The Khansari plaintiffs alleged that Mr. Khansari called 911 because Mrs. Khansari believed that Corey had attempted suicide through an overdose of prescription medication. *Id.* at 850. An ambulance arrived. *Id.* However, Corey emphatically informed one of the paramedics that he did not want to go with the paramedics. *Id.* Shortly afterwards City of Houston police officers began to arrive. *Id.* The first officer got out of her squad car armed with a rifle and appeared to put

a round in the chamber as if preparing to fire. *Id*. Mrs. Khansari asked the officer: "What are you doing?" *Id*. The officer allegedly replied with words to the effect "I might have to kill someone". *Id*. Mrs. Khansari explained that Corey needed to have his stomach pumped and that there were no guns in their home. *Id*.

Several of the additional officers that arrived were also armed with rifles. *Id*. Armed officers yelled at Mr. Khansari in a threatening manner to get out of the way, that he was interfering with police work, and that if he did not get out of the way, he would be arrested. *Id*. Mr. Khansari complied. *Id*. At some point, Corey walked out of the house and was standing in the yard near the front door. *Id*. The officers pointed their weapons at Corey, with "red laser beam dots" appearing on him. *Id*. Both Corey and his mother feared that the officers were going to shoot Corey. *Id*. Mrs. Khansari, attempting to protect her son, interposed herself between some of the officers and Corey. *Id*. Mrs. Khansari repeated that the Khansaris were unarmed. *Id*. At this time, red laser beam dots appeared on Mrs. Khansari. *Id*. Officers were shouting. *Id*. Fearing that his mother was in danger, Corey pushed Mrs. Khansari "out of the line of fire." *Id*. Immediately, an officer fired a taser at Corey, which struck Corey in the head; one of the taser darts pierced Corey's eye. *Id*. Mrs. Khansari was "within feet of her son when he was shot by taser guns." *Id*. at 862.

Corey received an electrical charge from the taser and fell to his knees and was disoriented. *Id*. at 850. He tried to get up, and received additional electrical charges from the taser. *Id*. Witnessing this, Mr. Khansari "felt extreme anxiety and fell to the ground, feeling like he was having a heart attack." *Id*. at 850-51. Paramedics rushed to Mr. Khansari and took him into the ambulance. *Id*. at 851. Corey retreated to the interior of the home and pulled the taser dart from his eye. *Id*. Mrs. Khansari called Corey on the phone; a police officer refused to speak to Corey, but Corey told a fireman that he would come out of the house with his hands over his head. *Id.* When Corey emerged, a police officer kicked Corey to the ground. *Id*. Corey was then taken to a hospital for treatment. *Id*.

Corey was never charged with a crime and did not have a weapon at any time during the incident. *Id*. Mrs. Khansari observed that Corey was shot in the face with a taser and, later, that he had pulled the dart from his eye. *Id*. at 862. Mrs. Khansari alleged she was "herself a subject of the Officers' conduct, being pointed at with guns, being grabbed by the neck or shoulder, and being told threatening statements." *Id*. Mrs. Khansari "suffered shock as a result of the direct emotional impact upon her from the Officers' actions directed specifically at her and from her contemporaneous observance of the events." *Id*.

The District Court found that the facts alleged were not sufficient to state a section 1983 claim arising from "force used against or witnessed by Corey's parents, Debra and Michael Khansari". *Id*. at 861. Specifically, the District Court found that "drawing and pointing weapons and shouting at Mr. and Mrs. Khansari are subject to dismissal for failure to state a claim because plaintiffs have not alleged facts capable of showing that the police actions were directed at Mr. or Mrs. Khansari or that Mr. or Mrs. Khansari suffered a seizure as required for a violation of rights protected by the Fourth Amendment." *Id*. at 862. Neither Mr. nor Mrs. Khansari "alleged facts capable of establishing that either Mr. or Mrs. Khansari suffered an injury that was more than de minimis due to any of the acts about which they complain." *Id*. "Instead, plaintiffs merely allege[d] that 'Mr. and Mrs. Khansari have suffered and continue to suffer extreme emotional distress as a result of the conduct of the Defendants." *Id*. at 862-63. "Plaintiffs allege no facts capable of establishing that either Mr. or Mrs. Khansari suffered physical injuries form police actions directed at them and not at Corey." *Id*. at 863.

"A civil rights claim must be based upon a violation of a plaintiff's personal rights secured by the Constitution, and a bystander who is not the object of police action cannot recover for the resulting emotional injuries under § 1983." *Id*. at 863 (*citing* Grandstaff v. City of Borger, *Texas*, 767 F.2d 161, 172 (5th Cir. 1985); Coon v. Ledbetter, 780 F.2d 1158, 1160 (5th Cir. 1986)). "There

is no constitutional right to be  free from witnessing police action". *Id.* at 863-64 (citing <u>Young v. Green</u>, 2012 U.S. Dist. Lexis 115027, 2012 WL 3527040, *4 (S.D. Tex. Aug. 15, 2012)). In sum, the claims of Mr. and Mrs. Khansari were dismissed because the alleged facts show that their claims were only for "emotional distress arising from witnessing police action against their son, Corey". *Id.* at 864. The same exact reasoning applies to the case at hand. Plaintiff Harmon does not allege any fact to show he suffered harm from police action directed at him.

## VI. <u>PLAINTIFFS FAIL TO OVERCOME SECOND PRONG OF IMMUNITY –<br>NO VIOLATION OF CLEARLY ESTABLISHED LAW</u>
### A. <u>Clearly Established Law Requires Factual Particularity</u>

"The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" <u>Anderson v. Creighton</u>, 483 U.S. 635, 646, 107 S. Ct. 3034, 3040 (1987) (quoting <u>Davis v. Scherer</u>, 468 U.S. 183, 195, 104 S. Ct. 3012 (1984)). Thus, the bedrock of immunity is *fair warning* to an officer that *his particular conduct* is clearly unlawful in the *specific circumstance* the officer encountered. <u>Hope v. Pelzer</u>, 536 U. S. 730, 739, 122 S. Ct. 2508 (2002). "For a legal principle to be clearly established, Plaintiff 'must be able to point to controlling authority-or a robust consensus of persuasive authority-that defines the contours of the right in question with a high degree of particularity,' <u>Morgan v. Swanson</u>, 659 F.3d 359, 371-72 (5th Cir. 2011), and that places the statutory or constitutional question 'beyond debate,' <u>Ashcroft v. al-Kidd,</u> 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011)."

In <u>Mullenix</u>, the Supreme Court stated:

> The dispositive question is whether the violative nature of particular conduct is clearly established…. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

<u>Mullenix</u>, 136 S. Ct. at 308 (citing <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)); Accord <u>Morrow v. Meachum</u>, No. 17-11243, ___ F.3d ___, 2019 WL 1090956 *3-4 (March 8, 2019 5th Cir. 2019).

_____

Subsequent Supreme Court decisions have likewise required, and emphasized, this general requirement necessary for analyzing and applying immunity. See White v. Pauly, 580 U.S. ___, 137 S.Ct. 548, 551-552 (2017); District of Columbia v. Wesby, __ U.S. __, 138 S. Ct. 577, 590 (2018); City of Escondido v. Emmons, __ U.S. __, 139 S. Ct. 500, 503 (2019) (*per curiam*).

The present case must be initially analyzed under Fourth Amendment standards, requiring a high degree of factual specificity similar to the qualified immunity analysis mandated in: Brosseau, 543 U.S. at 198; City and County of San Francisco v. Sheehan, __ U.S. __, 135 S. Ct. 1765, 1776 (2015); Kisela, 138 S. Ct. at 1153; Ontiveros v. City of Rosenberg, 564 F.3d 379, 384 n. 2 (5th Cir. 2009); and Vann v. City of Southaven, 884 F.3d at 310 (5th Cir. 2018) (*per curiam*), which all require analysis at a high degree of prior factual particularity. Such cases

> "[r]equire careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Saucier v. Katz, 533 U.S. 194, 205 (2001), citing Graham v. Connor, 490 U.S. 386, 396 (1989).

Under the Fourth Amendment, if an Officer "…reasonably but mistakenly believed that a suspect was likely to fight back… the officer would be justified in using more force than in fact was needed." Saucier, 533 U.S. at 205.

> Specificity is especially important in the Fourth Amendment context, where the court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."

Emmons, 139 S. Ct. at 503.

A recent three-Judge panel decision highlights the critical importance of Plaintiffs' inability to point to any controlling authority forbidding Defendant Tran's particular conduct. Two Circuit Judges considering Plaintiffs' version of a police-involved shooting event found the officer violated

Fourth Amendment standards. See generally <u>Winzer v. Kaufman County</u>, 916 F.3d 464, 476-477 (5th Cir. Feb. 18, 2019), 2019 WL 538227 (Oct. 21, 2019), denying Panel Rehearing and En Banc rehearing. The three Judge panel in <u>Winzer</u> was sharply divided as to whether the District Court correctly concluded that the Plaintiffs presented a sham affidavit to unsuccessfully oppose the police officers' Motion for Summary Judgment. District Judge Godbey held that the affidavit was a sham and he disregarded it. Circuit Judge Brown, in her dissent, agreed with District Judge Godbey that the affidavit was a sham not worthy of consideration. <u>Winzer</u>, 916 F.3d at 477-483. The two Circuit Judge panel majority appeared to recognize that there were differences between the Plaintiffs' earlier version of events stated in the original complaint, and his more recent summary judgment affidavit, but nonetheless the two Circuit Judge panel majority concluded that the affidavit did not sufficiently directly contradict the prior position to be disregarded as a sham. <u>Winzer</u>, 916 F.3d at 471-473.

Despite the sharp disagreement between four judges (District Judge Godbey and Circuit Judge Brown on the one hand, and the panel majority consisting of Circuit Judges Dennis and Graves on the other hand), <u>all three Circuit Judges agreed that the Officer was entitled to qualified immunity</u> because there was no violation of clearly established law in the context of the particular facts of the case. In fact, despite Judge Brown's partial dissent, she took care to explain that even if the Plaintiffs' version of events was considered and accepted (despite her views about the sham affidavit), the version of events offered by Plaintiffs did not present particular facts wherein a court could find a violation of clearly established law. The two other Circuit Judges agreed. The result was that in a lengthy almost 20-page opinion, including Judge Brown's dissent, all three judges succinctly agreed to qualified immunity in a 171-word section of the opinion. <u>Winzer</u>, 916 F.3d at 476-477.

**B.** **No Case Forbid Tran's Particular Conduct & Some Similar Cases Support His Conduct**

Defendant Tran has no duty to cite cases with factual similarity which support his position. <u>Vann</u>, 884 F.3d at 309, citing <u>Cass v. City of Abilene</u>, 814 F.3d 721, 732-733 (5th Cir. 2016). But no

less an authority than the Supreme Court has upheld the qualified immunity of a police officer who fired shots into a vehicle as it drove away from the officer who was standing next to the vehicle. Brosseau v. Haugen, 543 U.S. 194, 196-197 (2004). In Brosseau, an officer attempted to stop an individual who jumped into a parked vehicle and then closed and locked the door. 543 U.S. at 196. The officer gave commands to the occupant of the vehicle, who disobeyed the commands and looked for the keys attempting to get the vehicle started. In that case, the vehicle's windows were rolled up already and the officer struck the driver side window with her handgun in an attempt to break the window. The officer then reached inside the vehicle trying to grab the keys and she struck the suspect on the head with the barrel of her gun. The suspect finally succeeded in starting the vehicle. The allegations in the present Complaint, and depicted on the video show Tran engaged in similar conduct in this case. The Supreme Court stated:

> "As the Jeep started or shortly after it began to move, [Officer] Brosseau jumped back and to the left. She fired one shot through rear driver's side window at a forward angle hitting [the suspect] in the back. [The Officer] later explained that she shot [the suspect] because she was fearful for the other officers on foot who she believed were in the immediate area, and for the occupied vehicles in [the suspect's] path and for any other citizens who might be in the area."

Brosseau, 543 U.S. at 196-197. Here, Terry disobeyed multiple commands from Tran. Terry made two attempts to start his SUV, and was successful on his second attempt. In Brosseau, the officer jumped out the way of the apparently dangerous vehicle, but here Tran was actually holding onto the vehicle standing on the running board as Terry started the engine and the SUV began to move. In Brosseau, the officer standing next to the Jeep was arguably in less immediate peril than Tran here – who was standing on the SUV's running board as the SUV started and began to move. Tran certainly could reasonably fear for his own safety. As in Brosseau, Tran could also reasonably fear for the safety of other officers in the area, as well as the occupants of other vehicles, or any other pedestrians that might be in the area.

    Considering Brosseau, Goldston, and Woolery, and with Plaintiffs unable to point to

controlling authority which forbid Tran's conduct, Tran is certainly entitled to qualified immunity. Tran certainly did not violate clearly established law, and a reasonable officer could have assumed that his conduct, similar to conduct of other officers, did not violate any controlling legal standard.

In the present case, when the Court considers the admissions in the Complaint and the events depicted in the Arlington Police Department's video effectively incorporated into the Complaint, there is no violation of clearly established law. Plaintiffs are unable to cite to a case of controlling authority, wherein a court considered facts sufficiently similar to the particular facts of this case, in which any court held that an officer's use of force like that used by Defendant Tran was prohibited by controlling Fourth Amendment standards. Mullenix, 136 S.Ct. at 308; Brosseau, 543 U.S. at 198; Vann, 884 F.3d at 310. In fact, Plaintiffs' inability to cite a case of controlling authority, prohibiting Tran's use of force, dooms their case. Vann, 884 F.3d at 309; Cass, 814 F.3d at 732-733.

Although the Court should dismiss the claims brought by Plaintiff Harmon who alleges Tran pointed his firearm across Harmon's face and discharged it killing Terry, and that this amounted to excessive force, Hamon also is unable to cite to controlling authority wherein a court held that actions like Defendant Tran's actions, directed at Terry but not directed at Harmon, were prohibited by Fourth Amendment standards. For this additional reason, Defendant Tran is entitled to qualified immunity as to the claims asserted by Plaintiff Harmon. Vann, 884 F.3d at 310. In short, Defendant Tran could not know, at the time of his actions, that a court would later hold that Harmon, as an occupant of the car could somehow subject Tran to a claim even though Tran's actions were not directed at Harmon and Tran did not make contact with Harmon.

## VII.  FAILURE OF STATE LAW CLAIMS FOR ASSAULT & BATTERY
### A.  Dismissal of Tort Claims is Mandatory

There is no doubt Plaintiff is suing Bau Tran alleging that he was acting within the scope of his official duties of employment as a Police Officer for Arlington P.D. (Complaint, Doc. 26 p. 16 ¶

139, and p. 20 ¶ 157). Plaintiffs squarely plead they are suing Tran and the City for "state law claims for assault and battery." (Complaint, Doc. 26 p. 2 ¶ 5). There is no doubt that Plaintiff has sued both of the Defendants, including the City, for all of their causes of action whether the causes are under a federal civil rights theory or under a State of Texas tort theory, as Plaintiff incorporates by reference all paragraphs in each of their causes of action (Complaint, Doc. 26 p. 14 ¶ 125, p. 15 ¶ 130, p. 16 ¶ 138, p. 17 ¶ 141, p. 18 ¶ 144, p. 19 ¶ 149, p. 20 ¶ 156, and p. 21 ¶ 159).

To the extent Plaintiff is suing Defendant Tran under Texas tort law for assault and battery, Plaintiff has made an immediate and irrevocable election of remedies to sue <u>only</u> the City within the meaning of Tex. Civ. Prac. & Rem. Code § 101.106(a).

Section 101.106(a) provides that by filing suit against the City, Plaintiff has made an "irrevocable election" that immediately and forever bars any suit or recovery by the Plaintiff against Defendant Tran.

Alternatively, because Plaintiffs squarely assert Tran was acting within the scope of his official duties as a Police Officer, any state law claims against Tran individually should be treated as official capacity claims only, pursuant to § 101.106(f), and dismissed as to Tran, individually. TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). (Complaint, Doc. 26 p. 16 ¶ 139 and p. 20 ¶ 157). Dismissal under TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) is proper if two elements are satisfied: (1) the suit is based on conduct within the general scope of the defendant's employment, and (2) the claims could have been brought under the Texas Tort Claims act against the employer. See <u>Kelemen v. Elliott</u>, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008). Plaintiff's Complaint repeatedly asserts that Tran was, at the relevant time, performing within the scope of his official duties as an Arlington Police Officer (Complaint, Doc. 26 p. 16 ¶ 139, and p. 20 ¶ 157). See also <u>Mission Consolidated I.S.D. v. Garcia</u>, 253 S.W.3d 653, 659 (Tex. 2008) and <u>Franka v. Velasquez</u>, 332 S.W.3d 367, 381-383 (Tex. 2011). <u>Franka</u> recognizes that the statutory bar applies to

claims against the employee acting in the scope of employment regardless of a plaintiff's ability to successfully pursue a tort claim against the City employer. 332 S.W.3d at 381-3. Accordingly, to the extent that Plaintiff's Complaint attempts to allege any state law claims against Tran, those state law claims against Tran must be dismissed.

### B.  Failure of Assault & Battery Claims

Plaintiff's Complaint includes a state law claim for assault and battery on behalf of Terry and by Harmon (Doc. 26 pp. 16-17 ¶¶ 139-140, p. 20 ¶¶ 157-158). A Fifth Circuit opinion analyzed an assault claim brought against a Police Officer under Texas law. In that case, the theory of assault was that the Police Officer had pointed his handgun at an arrestee.  Hinojosa v. City of Terrell, 834 F.2d 1223 (5th Cir. 1988), appeal after remand, 864 F.2d 401 (5th Cir. 1989), cert. denied, 493 U.S. 822 (1989).[4]  The Hinojosa court reviewed the elements of a Texas assault case under Texas law.  A person commits an assault if he intentionally or knowingly threatens another with bodily injury. A battery would be actually carrying out a harmful or offensive touching. Vietnamese Fisherman Association v. Knights of the KKK, 518 F.Supp. 993 (S.D. Tex. 1981).  The Hinojosa court recognized that under Texas law, activity that would otherwise subject a person to liability in tort does not constitute tortious conduct if the actor is privileged to engage in that conduct.  Hinojosa, 834 F.2d at 1231. The Fifth Circuit therefore looked to Texas law and found that Texas law affords Police Officers a privilege to use force against a person in the performance of his duties as a an Officer. The Court focused on Penal Code §§ 9.21, 9.22, 9.51 and 9.52. Penal Code § 9.21 allows use of force when the actor reasonably believes that the conduct is required or authorized by law.  Section 9.51 specifically authorizes a Peace Officer to use force, when and to the degree he reasonably believes the force is immediately necessary to make an arrest or search if the Officer reasonably believes the

---

[4] The Hinojosa case was abrogated on other grounds dealing with whether there had been a Constitutionally significant injury for purposes of a federal § 1983 claim. See generally Manis v. Cohen, 2001 WL 1524434 (N.D. Tex. 2001).

arrest or search is lawful. Certainly, the use of force here would be privileged under the Texas statutes referred to by the <u>Hinojosa</u> opinion. There was no assault or battery under Texas law.  These claims must be dismissed with prejudice for this additional reason.

## VIII.  <u>FAILURE OF CLAIM FOR PUNITIVE DAMAGES</u>

Plaintiffs are seeking punitive damages as some form of standalone claim. However, punitive damages cannot be recovered unless there is an award of actual damages. Because Plaintiffs have not stated a claim under federal law that would support a right of recovery, punitive damages simply cannot be recovered as a standalone claim. An award of punitive damages under federal law requires a showing of the requisite intent, together with a violation of a constitutional right. There is no abstract value of a constitutional right to be addressed with compensatory or punitive damages. See generally <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299, 306 (1986).

## IX.  <u>ALTERNATE REQUEST FOR A RULE 7 REPLY<br>PURSUANT TO FED. R. CIV. P. 7(a)</u>

Tran urges the Court to grant his Second Motion to Dismiss. His first Motion to Dismiss (Doc. 20) placed Plaintiffs on notice of the failures of their case, and they dodged a substantive ruling by amending their Complaint. Effectively, Plaintiffs have presented their best case. However, in the event the Court is inclined to allow Plaintiffs another chance, the Court should require Plaintiffs to address Tran's immunity assertions in a Rule 7(a) Reply.

### A.  <u>Overview of Plaintiffs' Claims</u>

Plaintiffs' claims against Bau Tran are based primarily on a theory that he violated decedent Terry's and Harmon's civil rights by use of excessive force. Against this background, Plaintiffs provide inadequate factual information to establish their claims (see § V above). Plaintiffs do not provide adequate descriptions of the totality of the circumstances involving decedent Terry's conduct that led to Defendant Tran's conduct. Plaintiffs ignore the video they rely upon and incorporate into their Complaint.

## B.  Requirements for Factually Specific Allegations

The Fifth Circuit makes it clear that the immunity defense should be resolved at the earliest stages. Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995). The United States Supreme Court approves of the same procedure. When public officials such as Defendant have pled the affirmative defense of immunity in his Answer, the District Court should require the Plaintiffs to reply to that defense in detail.  By definition, a Reply pursuant to Fed. R. Civ. P. 7(a) must be tailored to the assertion of qualified immunity and fairly engage the Defendant's allegations.  Schultea, 47 F.3d at 1433.

Defendant Tran's immunity assertions are set forth in detail in his Answer at paragraphs 3.01-3.15. Plaintiffs should be required to plead specifically all facts to oppose Defendant Tran's immunity defense. See Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995); and Crawford-El v. Britton, 523 U.S. 574, 597-598 (1998).

As pointed out, the Complaint does not, with adequate factual specificity, provide facts which, if true, would penetrate the immunity of Defendant Tran. Iqbal at 678. The Complaint is not sufficient to overcome a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because it is a collection of conclusory allegations, and ignores facts that must be addressed in the context of an excessive force claim and an analysis of the immunity defense. In accordance with the Fifth Circuit's well-settled Schultea procedure, and in accordance with the procedure recommended by the United States Supreme Court, if the Court does not dismiss the case, then Plaintiffs should be required to file a Reply to Tran's specific immunity assertions.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Tran prays that the Court dismiss the claims asserted against him, or alternatively the Court order Plaintiffs to file a Rule 7(a) Reply to his immunity defense.

Respectfully submitted,

___/s/James T. Jeffrey, Jr.___
JAMES T. JEFFREY, JR.
State Bar No. 10612300
LAW OFFICES OF JIM JEFFREY
3200 W. Arkansas Lane
Arlington, Texas 76016
(817) 261-3200
Fax (817) 275-5826
**ATTORNEY FOR DEFENDANT
BAU TRAN**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing is being forwarded this 8th day of January 2020, the foregoing was electronically filed with the Electronic Case Filing System for the Northern District of Texas and electronic notice of this filing was given to all counsel of record for all parties via the ECF System.

___/s/James T. Jeffrey, Jr.___
JAMES T. JEFFREY, JR.