UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERLEY WOODS, et al | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 4:19-CV-00696-O |
| | § | |
| CITY OF ARLINGTON, et al | § | |

### BAUTRAN'S REPLY BRIEF OPPOSING PLAINTIFFS' RESPONSE TO SECOND MOTION TO DISMISS

NOW COMES Defendant Bau Tran and Replying in opposition to the January 22, 2020 "Plaintiffs' Response in Opposition to Defendant Bau Tran's Motion to Dismiss the First Amended Complaint" ("Response") (Doc. 35) as follows:

### I.  OVERVIEW & SUMMARY OF REPLY

Both the Original Complaint (Doc. 1 p. 2 ¶ 3) and the First Amended Complaint (Doc. 26 p. 2 ¶ 3) effectively incorporated the Arlington Police Department's redacted video. The facts in the Complaint and facts which are indisputably demonstrated by the incorporated video demonstrate Plaintiffs cannot overcome Tran's qualified immunity because such facts do not demonstrate both (1) a violation of Terry's or Harmon's rights under the Fourth Amendment, and (2) any such violation (if it occurred) was prohibited by clearly established law. Plaintiffs ignore information captured in the video, and assert that information Tran's Motion points to in the video should be disregarded, apparently because the video is more accurate and complete than the narrative in Plaintiffs' live Complaint (Doc. 26). Conceding that the facts known to Tran supported a suspicion of driving while intoxicated, Plaintiffs then absurdly assert that merely because DWI is a Class B misdemeanor, there was insufficient danger to support use of deadly force (Response, Doc. 35 p. 7). Plaintiffs seem to assert that Terry's misdemeanor, together with Terry's other conduct, could not be perceived as creating an immediate serious danger. And finally, to the extent Plaintiffs try to bring a state law assault and battery claim against Tran, Plaintiffs disregard controlling law and

disregard their own pleadings which constituted an immediate and irrevocable election to sue only

the City of Arlington for any such state law theory. See Tex. Civ. Prac. & Rem. Code § 101.106(a)

and (f).

## II.  FACTS ADMITTED IN COMPLAINT OR ESTABLISHED BY VIDEO

Both the Original Complaint (Doc. 1 p. 2 ¶ 3) and the current Complaint (Doc. 26 p. 2 ¶ 3)

cite to a video released by the Arlington Police Department and available on YouTube – Plaintiffs

have effectively attached the video to their Complaint. The video may be located at

**https://www.youtube.com/watch?v=bh08la7J0_s**.[1] Because the events specifically documented

on the "attached" video amount to actual documentation of matters, the video should control over

Plaintiffs' mere allegations. U.S. Ex. Rel. Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 377

(5th Cir. 2004); Scott v. Harris, 550 U.S. 372, 380-381 (2007).[2]

## A.  Driving While Intoxicated is Dangerous and Sometimes is Considered a Violent Crime

While Plaintiffs state, "The facts known to Defendant Tran supported a suspicion of driving

while intoxicated, a Class B misdemeanor under Texas law. Texas Penal Code § 49.04." (Response,

Doc. 35 p. 7). Defendant agrees. While Plaintiffs try to downplay DWI as almost a merely

mischievous type of conduct, referencing driver Terry's "statement that he had smoked a doobie"

(Response, Doc. 35 p. 7), common sense dictates, and court decisions recognize that the offense of

DWI is far from a merely mischievous act, but instead DWI is dangerous.

---

[1] Apparently, the Arlington Police Department posting of the YouTube video has been accomplished in a way that prevents the video from being copied or downloaded. However, because it is relied upon by Plaintiffs, and readily available, the Court should view the portions of the video which are cited in Tran's Motion to Dismiss and again discussed herein.

[2] While Plaintiffs toss in a footnote asserting they dispute the characterization of the video evidence, and accuse Defendant's counsel of recharacterizing the facts – Plaintiffs do not point to any specific portion of the video that has been mischaracterized in the Motion to Dismiss (Response, Doc. 35 pp. 5-6 fn 1). Plaintiffs then make an *ad hominem* reference to an alleged common technique of Defendant Tran's counsel citing Cole v. Carson, 935 F.3d 444, 455 (5th Cir. 2019) (*en banc*), but neglect to point out there is pending Petition for Writ of Certiorari in that case and overlook comments made by some of the dissenting judges in Cole, including "the majority opinion paints a picture of the relevant facts that has evolved considerably from the first and second panel opinions…. To the majority's picture, it is necessary to add undisputed facts recited in the prior opinions and undisputed evidence from Plaintiffs' experts." Judge Jones' dissent, joined by Judges Smith, Owen, Ho, Duncan, and Oldham, 935 F.3d at 458. Similar observations were made by Judge Smith, 935 F.3d at 469-470; Judge Ho, 935 F.3d at 476; and Judge Duncan, 935 F.3d at 479-480. The Court should be skeptical of Plaintiffs' technique of attacking Defendant Tran's counsel rather than addressing Defendant Tran's references to specific admissions Plaintiffs make in their pleadings and addressing specific information captured on the video which Plaintiffs incorporate into their pleadings.

A Fifth Circuit case recognized that as long as a driver who was suspected of being intoxicated was sitting in his vehicle behind the steering wheel of his stopped pickup, the driver posed a potential danger to the officers and others. Brothers v. Zoss, 837 F.3d 513, 519 (5th Cir. 2016). Although Defendant recognizes differences between this case and Brothers, it is important for the Court to know that the Fifth Circuit recognized that a motor vehicle can be used as a dangerous weapon and therefore the suspected offense of driving while intoxicated was considered a serious offense. Brothers, 837 F.3d at 519.

Other courts have recognized that the offense of DWI or driving under the influence, even if a misdemeanor under state law, can even be considered a crime of violence for purposes of enhancement of sentences. U.S. v. DeSantiago-Gonzalez, 207 F.3d 261, 264 (5th Cir. 2000). In DeSantiago, the Court recognized that the very nature of the crime of DWI presents a serious risk of physical injury to others which in turn makes DWI a crime of violence for purposes of enhancement of a sentence. See also: U.S. v. Trejo-Galvan, 304 F.3d 406, 409 (5th Cir. 2002); U.S. v. Veach, 455 F.3d 628, 636-37 (6th Cir. 2006). In Veach, the Sixth Circuit recognized that of the circuits that had considered whether DWI was a crime of violence for enhancement under sentencing guidelines, only the Eighth Circuit had concluded that DWI should not be treated as a crime of violence for sentencing guidelines. Veach, 455 U.S. at 636-37. In short, there is no doubt that because Terry had, according to Plaintiffs, admitted to smoking a "doobie" (Doc. 35 p. 7), and because both Officer Tran and Officer Herlihy could smell marijuana emanating from the SUV driven by Terry (Complaint, Doc. 26 p. 4 ¶¶ 19 & 20; video counter 9:06 and 27:00-27:05), Plaintiffs are correct in admitting that Defendant Tran had at least a suspicion of driving while intoxicated. Because such an offense is dangerous and can even be considered a violent offense, it was certainly reasonable for Tran to be prepared to use at least some force to try to prevent Terry from driving away. Brothers, 837 F.3d at 519. This of course does not take into account Terry's other actions that

were immediately dangerous to Tran.

## B. Driver Terry's Other Dangerous Actions Caused the Fast But Reasonable Escalation of Use of Force

Plaintiffs try to downplay any danger to Tran by claiming that "throughout the entirety of the encounter, Tran was positioned adjacent to the passenger side door of Mr. Terry's vehicle" (Response, Doc. 35 p. 8, citing Complaint, Doc. 26 ¶ 28). However, Plaintiffs disregard their own pleading allegations and clear video evidence demonstrating that Tran was not merely positioned adjacent to the passenger side door, but at one point he was holding onto the SUV and standing on the running board as he gave repeated orders to driver Terry. And Terry disregarded Tran's orders when he began driving the vehicle with Tran hanging onto the outside of the SUV. As a starting point, the Complaint squarely states:

> "31. In an effort to gain a good angle to shoot Mr. Terry, Defendant Tran proceeded to grab onto the passenger window and climb onto the side of the vehicle, reaching for his service weapon with his right hand.
>
> "32. As Terry's vehicle began to move forward, Tran stuck his gun through the passenger window – mere inches away from the face of Harmon – and fired at least four shots at Terry."

(Complaint, Doc. 26 p. 5 ¶¶ 31 & 32). While Defendant does not agree that Tran initially climbed onto the side of the vehicle to gain a good angle to shoot Terry, the Court may see for itself the video demonstrates different facts.

Tran asks, "*Hey, could you do me a favor and cut the engine?*" At that point, driver Terry can be seen turning off the ignition (video counter 27:18). Tran responds, "*Thank you, appreciate that.*" (video counter 27:20). Roughly two and a half minutes later, driver Terry rolls up the windows of the SUV (video counter 29:47), and Tran almost immediately loudly states, "*Hey, Hey, Hey, Hey!*" (video counter 29:49). At that point, just as alleged in the Complaint, the video shows Tran's left hand grabbing the window glass and Tran stepping on the running board and then reaching inside the SUV with his right arm.

Tran then states, "*Hey stop.*" (video counter 29:51-52). Driver Terry can be seen leaning

---

forward as if trying to reengage the ignition of the SUV. The reflection in the shiny surface of the

SUV shows Tran's right hand on his holstered pistol (video counter 29:52), almost immediately

followed by driver Terry attempting to start the SUV's engine (video counter 29:53). Tran

immediately orders, "*Stop*" (video counter 29:54), and the shiny surface of the SUV reflects that

Tran's right hand is behind his body. No drawn gun is visible.

When the SUV's engine is running, and just as alleged in the Complaint, the vehicle begins

to move forward with Tran on the running board holding on. Only then does Tran start to fire shots

while yelling (video counter 29:57-29:59). And even after this, Tran clings to the side of the SUV

for another 7 or 8 seconds before he either falls or jumps off and Tran then rolls in the roadway

(video counter 30:07-30:08).

### III.  FAILURE OF FOURTH AMENDMENT CLAIM ON BEHALF OF TERRY
#### A.  No Fourth Amendment Violation

Trying to assert that there is a Fourth Amendment violation, Plaintiffs point to a Fifth Circuit

case and other Circuit cases holding that an officer's use of force cannot be justified by the threat of

a moving vehicle when the officer has intentionally moved into the vehicle's path (Response, Doc.

35 p. 9, citing Edmond v. City of New Orleans, 20 F.3d 1170 (5th Cir. 1994); Kirby v. Douva, 530

F.3d 475, 482 (6th Cir. 2008); Estate of Starks v. Enyart, 5 F.3d 230, 233-235 (7th Cir. 1993).

But these three cases provide no support to Plaintiffs in the context of the undisputed facts

here.[3] Under the facts here, as discussed above, Defendant Tran did not place himself into the path

of an already moving vehicle and then use the motion of the vehicle headed toward him as

justification for deadly force. Instead, the facts clearly demonstrate that when driver Terry attempted

to roll up the windows of the SUV (video counter 29:47), and before Terry reengaged the ignition

---

[3] Defendant questions whether any of the three cases or a combination of the three cases can even constitute clearly established law under the qualified immunity analysis. The Fifth Circuit's Edmond opinion is unpublished and at most has a cursory analysis that does not squarely state the officer had moved in front of the vehicle before shots were fired. The other two cases are nonprecedential because they are from the Sixth and Seventh Circuits.

to turn on the SUV's engine and begin moving it, Tran gave orders, grabbed the window glass, and stepped up onto the running board of the stationary SUV (video counter 29:49-29:52). Even after Terry unsuccessfully attempted to start the engine (video counter 29:53), Tran remained on the running board and was yelling stop (video counter 29:54). It was only after the SUV's engine can be heard engaging (video counter 29:57), and after the vehicle began to move forward (Complaint, Doc. 26 p. 5 ¶¶ 31 & 32) with Tran hanging onto the side of the vehicle, did Tran fire shots to stop Terry from engaging in the reckless and dangerous conduct of DWI and the even more immediately potentially deadly conduct of disobeying Tran's orders while driving away with Tran clinging to the side of the SUV. Whether Tran would have fallen from the moving SUV to the concrete road, or whether he had intentionally jumped from the moving SUV to the concrete road, or whether he would have been thrown off the moving SUV to the concrete, there is no doubt from an objectively reasonable standpoint, Officer Tran could have perceived an immediate risk of serious bodily harm or death. When an officer has probable cause to believe a suspect's actions pose an immediate risk of death or serious bodily harm, the officer does not violate the Fourth Amendment by using deadly force to stop that risk. Tennessee v. Garner, 471 U.S. 1, 11 (1985). And here, not only was driver Terry engaging in conduct immediately dangerous to Officer Tran, but as Plaintiffs concede, Officer Tran had a reasonable basis for suspecting driver Terry was under the influence of marijuana and committing the dangerous offense of DWI (Response, Doc. 35 p. 7).

## B.  No Violation of Clearly Established Law

Plaintiffs' Response collapses the Fourth Amendment analysis into the clearly established law component of qualified immunity – Plaintiffs cite nary a case wherein a court considered substantially similar facts and concluded that conduct like Tran's conduct was forbidden. White v. Pauly, 580 U.S. ___, 137 S.Ct. 548, 551-552 (2017); District of Columbia v. Wesby, __ U.S. __, 138 S.Ct. 577, 590 (2018); City of Escondido v. Emmons, __ U.S. __, 139 S.Ct. 500, 503 (2019);

Winzer v. Kaufman County, 916 F.3d 464, 476-477 (5th Cir. 2019).

And even though Plaintiffs try to assert that because Tran was on the side of the vehicle instead of in its path, the Supreme Court has held that an officer is entitled to qualified immunity for firing a shot through the rear driver's side window at a forward angle hitting the suspect in the back when the suspect disobeyed orders and began driving away from the officer who was on foot next to the vehicle. Brosseau v. Haugen, 543 U.S. 194, 196-97 (2004).

As discussed in the Motion to Dismiss, cases in the Northern District concluded that officers did not violate Fourth Amendment standards by using deadly force when the officers fired shots at vehicles under circumstances which have no material distinction from the present case. Goldston v. City of Fort Worth, 2017 WL 11349538 *2 (N.D. Tex. 2017), affirmed at 775 Fed. Appx. 772 (5th Cir. 2019). In Goldston, the officer on foot next to the vehicle fired shots into the driver's side window at pointblank range when the officer had reason to believe that another officer at or near the scene was in danger. In another Northern District case, an officer fired multiple shots through the roof of a vehicle, as the officer was clinging to the roof of the vehicle while it was being driven down the street. The Court concluded there had been no violation of constitutional rights. Woolery v. City of Mineral Wells, 2005 WL 755762 *6 (N.D. Tex. 2005).[4]

Plaintiffs cannot overcome either prong of the qualified immunity defense concerning Terry's claims. The claims fail and must be dismissed.

### IV.  FAILURE OF HARMON'S CLAIMS
#### A.  No Fourth Amendment Violation

Defendant Tran demonstrated that Harmon's claims fail because he was not the intended subject of Tran's use of force (Motion, Doc. 32 pp. 12-17). Plaintiffs continue to make no claim that

---

[4] It is worth noting in Woolery, the officer grabbed onto the roof rack and then stood on the rear bumper of the vehicle just as it began moving away from the officer – in contradiction to Plaintiffs' arguments here that an officer loses the right to protect himself through use of deadly force if the officer has put himself into a dangerous position.

Tran intentionally directed force at Harmon. At most, Plaintiffs cite eight cases from a variety of courts involving fact patterns where officers intentionally pointed guns directly at various individuals, at points in time when the individuals posed no threat of safety to the police (Response, Doc. 35 pp. 9-10). The City of Arlington does a very good job of discussing in detail four of the eight cases and demonstrating how those cases have no application to the facts in this case (Arlington's Reply, Doc. 31 pp. 5-8). All eight cases involve officers intentionally pointing guns directly at persons – but Tran did not point his gun directly at Harmon.

Plaintiffs point to no case wherein a court found a violation of a constitutional right when an officer merely used force in close proximity to the claimant, and there was not even an allegation that when the officer used force he intentionally directed any force at the claimant, such facts implicate a constitutional right of the claimant, much less implicate a violation of any constitutional rights of the claimant. It is clear that federal law does not recognize bystander claims under § 1983. Coon v. Ledbetter, 780 F.2d 1158 (5th Cir. 1986); Khansari v. City of Houston, 14 F.Supp.3d 842, 862-65 (S.D. Tex. 2014). Even if Defendant Tran had accidentally hit Harmon with a gunshot while Tran was intentionally shooting at Plaintiff Terry, the actual gunshot striking Harmon would not have implicated Fourth Amendment rights because a seizure does not occur under such facts. Lindol-Riveros v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990); Medeiros v. O'Connel, 150 F.3d 164, 166-167 (2nd Cir. 1998); Schultz v. Braga, 455 F.3d 470 (4th Cir. 2006); Guerra v. Montgomery County, 118 Fed.Appx. 673, 2004 WL 2798915 (4th Cir. 2004); McCoy v. City of Monticello, 411 F.3d 920 (8th Cir. 2005).

**B.  No Violation of Clearly Established Law**

Once again, Plaintiffs collapse the two prongs of qualified immunity and merely assert that because they claim Tran should not have pointed his gun at Terry while in the vicinity of Harmon, this is enough to overcome Tran's qualified immunity. But even if the court is inclined to find that

Plaintiffs have stated a Fourth Amendment violation, Plaintiffs point to no cases in which a court considering substantially similar facts held that an officer's conduct like the conduct of Tran is prohibited. Tran was therefore entitled to qualified immunity. White v. Pauly, 580 U.S. ___, 137 S.Ct. 548, 551-552 (2017); District of Columbia v. Wesby, __ U.S. __, 138 S.Ct. 577, 590 (2018); City of Escondido v. Emmons, __ U.S. __, 139 S.Ct. 500, 503 (2019); Winzer v. Kaufman County, 916 F.3d 464, 476-477 (5th Cir. 2019).

## V. FAILURE OF STATE LAW CLAIMS FOR ASSAULT AND BATTERY

Instead of engaging Defendant Tran's arguments about the failure of their state law assault and battery claims, Plaintiffs ignore Tran's citations to their Complaint and glibly assert that Tran's allegations do not "accurately reflect the pleadings in the Amended Complaint." (Response, Doc. 35 p. 11). But Plaintiffs do not point to any specific inaccuracy.

As a starting point, the Court should look to Tex. Civ. Prac. & Rem. Code § 101.106(a) and (f). The statute makes it clear that the initial filing of a suit against a governmental unit "…constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee…". Tran's first Motion to Dismiss pointed out that Plaintiffs initially sued both Tran and the City of Arlington for all causes of action including theories of recovery under a State of Texas tort theory, and this barred the claims against Tran (first Motion to Dismiss, Doc. 20 pp. 21-22). If Plaintiffs try to evade the consequences of their immediate irrevocable election under § 101.106(a), the amendment cannot overcome the consequences of their initial choice, in the Original Complaint, to sue both the City of Arlington and Defendant Tran under a tort theory. (See Original Complaint, Doc. 1 p. 12 ¶ 106, p. 13 ¶ 111, p. 14 ¶ 118, p. 15 ¶ 121, p. 16 ¶ 124, p. 17 ¶ 129, p. 18 ¶ 135, and p. 18 ¶ 138). The state and federal courts uniformly recognize that an amendment cannot overcome the election Plaintiffs made in the initial Complaint to sue both Tran and the City of Arlington – with the result that the state law tort claims of assault and battery,

to the extent asserted against Tran, fail. <u>Texas Department of Aging and Disability Services v. Cannon</u>, 453 S.W.3d 411, 415-16 (Tex. 2015) (allowing only new civil rights claims to be added); <u>Villasan v. O'Rourke</u>, 166 S.W.3d 752, 762-63 (Tex. App. – Beaumont 2005) (disapproved of on other grounds by <u>Cannon</u>); <u>Davray, Inc. v. City of Midlothian</u>, 2005 WL 1586574 *17 (N.D. Tex. 2005); <u>Alcala v. Texas Webb County</u>, 620 F.Supp.2d 795, 806-807 (W.D. Tex. 2009); <u>Quinn v. Guerrero</u>, 2016 WL 4529958 *5 (E.D. Tex. 2016). For all these reasons, the attempt to assert a claim under Texas law for assault and battery fails and the claims against Tran must therefore be dismissed.

An additional ground for dismissing the claims against Tran is Plaintiffs' repeated assertion that Tran is sued for acts he committed "within the course and scope of his duties as a police officer for the Arlington P.D." (Complaint, Doc. 26 p. 16 ¶ 139, and p. 20 ¶ 157). Tex. Civ. Prac. & Rem. Code § 101.106(f) mandates dismissal of the claims against Tran because he is (1) sued based on conduct within the general scope of his employment; and (2) the claims could have been brought under the Texas Tort Claims Act against his employer the City of Arlington. <u>Kelemen v. Elliott</u>, 260 S.W.3d 518, 524 (Tex. App. – Houston [1st Dist.] 2008), and <u>Franka v. Velasquez</u>, 332 S.W.3d 367, 381-383 (Tex. 2011). The statutory bar of § 101.106(f) applies to the claims against Tran even if Plaintiffs could not have eventually successfully pursued a tort claim against the City of Arlington. <u>Franka</u>, 332 S.W.3d at 381-3. The state law claims of assault and battery fail as to Tran and must be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Tran asserts all claims against him fail and must be dismissed.

Respectfully submitted,

__/s/James T. Jeffrey, Jr.__
JAMES T. JEFFREY, JR.
State Bar No. 10612300
LAW OFFICES OF JIM JEFFREY

3200 W. Arkansas Lane
Arlington, Texas 76016
(817) 261-3200
Fax (817) 275-5826
**ATTORNEY FOR DEFENDANT
BAU TRAN**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing is being forwarded this 5th day of February 2020, the foregoing was electronically filed with the Electronic Case Filing System for the Northern District of Texas and electronic notice of this filing was given to all counsel of record for all parties via the ECF System.

        __/s/James T. Jeffrey, Jr.__
        JAMES T. JEFFREY, JR.